542 F.2d 840
 In the Matter of WEIS SECURITIES, INC., Debtor.
STOCK CLEARING CORPORATION INC., Plaintiff-Appellant,
v.
WEIS SECURITIES, INC., and Edward S. Redington, as Trustee
of Weis Securities, Inc., Defendants-Appellees,
Securities Investor Protection Corporation, Applicant-Appellee.
 No. 928, Docket 75-7648.
 United States Court of Appeals,
Second Circuit.
 Argued April 13, 1976.
Decided Sept. 15, 1976.
 
 Mark L. Davidson, New York City (Milbank, Tweed, Hadley & McCloy, New York City, on the brief), for plaintiff-appellant.
 George A. Davidson, New York City (Hughes Hubbard & Reed, Neil A. Goteiner, New York City, of counsel), for defendant-appellee Edward S. Redington, as Trustee of Weis Securities, Inc.
 George F. Bingham, Atty., Securities Investor Protection Corp., Washington, D. C. (Theodore H. Foche, Gen. Counsel, Securities Investor Protection Corp., on the brief; Wilfred R. Caron, Michael E. Don, Washington, D. C., of counsel), for appellee Securities Investor Protection Corporation.
 Before LUMBARD, HAYS and GURFEIN, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 Plaintiff-appellant, Stock Clearing Corporation Inc. ("SCC"), appeals from an order of the district court which affirmed an order of the Bankruptcy Court dismissing SCC's complaint. By its complaint SCC sought reclamation of securities delivered to the bankrupt, Weis Securities, Inc. ("Weis"), by SCC for which SCC has not received payment.[1]
 
 
 2
 SCC, a New York corporation and wholly-owned subsidiary of the New York Stock Exchange ("NYSE"), is a clearing corporation which provides a central facility for the clearing and settling of security transactions among its members. Weis was a broker-dealer and member in good standing of SCC.
 
 
 3
 SCC facilities greatly simplify the physical transference of stock certificates between member brokers and the payment therefor. In lieu of making individual delivery and payment for each of the multitude of transactions a broker engages in daily, a member of SCC can make all deliveries through SCC, receive all purchases through SCC, and make a single payment to, or receive a single payment from, SCC representing the net credit or debit balance on a day's transactions.
 
 
 4
 At the end of a trading day SCC matches the trades in each security for each of its members and issues a "balance order." Thus, if a broker purchased a particular stock through five different brokers for five different customers and sold that same stock for other clients through still other brokers, the balance order would represent the net of these multiple transactions so that only a single delivery or receipt is necessary to clear all of them. The balance order directs the member to deliver to, or receive from, another member a specified number of shares of that security on the "settlement day," the fifth business day after the date of trade.
 
 
 5
 Deliveries for a settlement day commence the preceding evening and are timely up to 11:30 A.M. that day. A delivering member brings the securities to SCC in envelopes with the receiving member and total dollar amount of the contents within identified on the outside of the envelope. An SCC clerk sorts the envelopes into the cubicles of the receiving members without inspecting or in any way confirming the contents of the envelopes. Receiving members may pick up delivered envelopes between 8:00 A.M. and 11:30 A.M. on the settlement day. If the contents of any of the envelopes are irregular, the receiving member may return the envelope to SCC up until 2:00 in the afternoon that day. All payments are due at 3:00 P.M. on settlement day and are made directly to or from SCC not between brokers. Thus, if a broker has received more securities than he has delivered he must pay SCC the difference by 3:00 P.M.; conversely, if a broker has delivered more securities than he has received SCC makes payment to that broker by 3:00 P.M.[2]
 
 
 6
 On the morning of May 24, 1973, the day the contested securities were delivered to Weis, reports of financial trouble at Weis appeared in the newspaper and were widely discussed at SCC and the NYSE. Nevertheless, SCC employees were directed to conduct business in the normal manner. After Weis received from SCC all items directed to it from other brokers and delivered all items to SCC pursuant to the balance orders, Weis' SCC settlement account, as calculated in accordance with applicable SCC rules, reflected a net debit balance of $1,135,459.87. Under the SCC By-Laws and Rules[3] which together with the Clearing Member's Agreement governed the transactions between SCC and Weis, a member with a net debit balance must draw a check to SCC for the amount owed before 3:00 P.M. If that amount is $5,000 or over the check must be certified unless certification is waived by SCC. (Rule 7.)[4] At approximately 12:30 on May 24, the Securities Investor Protection Corporation commenced liquidation proceedings against Weis pursuant to its authority under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. (1970). At approximately 4:00 P.M. that day SCC accepted an uncertified check from Weis for the amount of Weis' net debit balance. The uncertified check was accepted upon the authorization of an officer of SCC after SCC was informed by Weis that certification was not possible because its bank account had been frozen. Weis' uncertified check was duly deposited by SCC but was returned by the bank upon which it was drawn for insufficient funds.
 
 
 7
 The SCC By-Laws and Rules clothed SCC with protections additional to that of requiring a certified check from a member. Under Rule 13 SCC was accorded a lien upon any securities held by it for the account of a member for all amounts owed SCC by that member; Rule 6, § 1(6) provided that delivery of securities to a receiving member by SCC is subject to SCC's right to retain such property as security for the member's obligation to SCC; Rule 6, § 1(11) accorded SCC a lien on any property of a member in SCC's possession for any debit balance due SCC by that member. The lien interest provided SCC by these Rules was extinguished when SCC voluntarily turned the securities over to Weis without restriction. National City Bank v. Hotchkiss, 231 U.S. 50, 57, 34 S.Ct. 20, 58 L.Ed. 115 (1913). Additionally, Rule 7 allowed SCC the right to demand such assurances as it deemed necessary of a member's ability to finance commitments, to impose further conditions for its protection, and to accelerate the time at which any payments are due.
 
 
 8
 Before the Bankruptcy Court SCC argued that the securities were delivered to Weis on the condition that they would be paid for in cash and Weis' failure to fulfill this condition precluded the securities from passing into Weis' estate. The case was heard on a stipulated record containing the basic facts which governed transactions between SCC and Weis, the dollar amounts of the transactions due for settlement on May 24, 1973, a copy of the SCC By-Laws and Rules, a copy of the Clearing Member's Agreement between SCC and the bankrupt, and deposition testimony of five witnesses which counsel agreed could be used by any party for any purpose. Briefs were filed and a hearing held. The bankruptcy court determined that SCC was never the owner of the contested securities and, never having acquired title to the securities, failed to assert a right to possession which is superior to the prima facie right of the Trustee, see National Silver Co. v. Nicholas, 205 F.2d 52, 55 (5th Cir. 1953), and thus failed to sustain the burden a petitioner for reclamation must bear. See 4A Collier on Bankruptcy P 70.39(3), at 476-77 (14th ed. 1976). Because the court found the requisite title absent it never reached the issue of whether the transactions were for cash or credit and dismissed SCC's complaint.
 
 
 9
 SCC appealed to the district court. That court, characterizing the Bankruptcy Court's rationale as "sound," held that even if SCC had title it could not reclaim the securities because it had parted with such title in a credit transaction.[5] See National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). When a debtor engages in a cash transaction, payment for the fair value of the goods received is not a preference under section 60 of the Bankruptcy Act, 11 U.S.C. § 96(a); 3 Collier on Bankruptcy § 60.23 (14th ed. 1975); In re Perpall, 271 F. 466 (2d Cir. 1921). When, however, a transaction is one which contemplates payment at a later time such that there is an extension of credit, subsequent payment would be on an antecedent debt and, if the other elements of section 60 are present, therefore a preference. The district court found that the clearing transactions accomplished through SCC are analogous to intra-day extensions of credit because SCC rules allow a broker to receive securities several hours (at least 31/2 hours and as much as 7 hours) before payment is due. Thus finding a credit transaction, satisfaction of which would constitute a preference, the district court affirmed the dismissal of SCC's complaint.
 
 
 10
 On appeal to this Court SCC argues that it is entitled to reclamation as a matter of law because SCC Rule 7, quoted note 3, supra, unambiguously provided for delivery against payment in cash. SCC further contends that if any ambiguity be found, a remand is necessary to develop a full factual record on the intent of the parties. We reject these contentions.
 
 
 11
 Both courts below proceeded to decision on the understanding that the entire case was submitted on the basis of the stipulated record and deposition testimony. The Bankruptcy Judge specifically asked counsel if there were any other material facts as to which evidence should be taken and the attorney for the Trustee answered in the negative without contradiction by SCC's counsel. Indeed, if SCC believed that the Bankruptcy Judge erred by dismissing the complaint without making further factual explorations, it is surprising this claimed error was not advanced before the district court. To the contrary, counsel for SCC advised the district court that "(t)he parties have entered into a stipulation of facts and there is no dispute as to the facts in this case." Moreover, the district court specifically questioned whether remand to the Bankruptcy Court would be appropriate if the court found a decision on the credit-cash nature of the transaction necessary or whether it should go ahead and decide the case on the merits. Counsel for SCC responded: "I think it would be appropriate because we are up in a stipulation of facts, as I indicated in my brief, that the entire issue be decided." SCC's belated contention that a remand is necessary is thus belied by its own invitation below that the case be decided on the facts as stipulated. Even at oral argument counsel for SCC was unable to inform this Court what, if any, relevant evidence would be developed at a further hearing.
 
 
 12
 SCC's claim that the courts below erred in dismissing its complaint for reclamation raises the problem of applying traditional legal doctrine concerning passage of title in cash and credit transactions to the hybrid of roles a stock clearinghouse performs. The usual legal terminology owner, bailee, subrogee does not appear adequately to characterize SCC's relationship to the securities it processes. We, however, leave the accommodation of these legal concepts to the unique functioning of a securities clearinghouse to another day and affirm the dismissal below on the limited grounds that the particular facts of this case evidence an extension of credit by the clearinghouse to the bankrupt broker.
 
 
 13
 For purposes of our decision we assume, arguendo, that SCC held title to the securities at the time of delivery to Weis. We further assume, arguendo, that the arrangement between SCC and its members contemplates cash transactions.[6] Even with these issues resolved favorably to SCC the complaint must fail because acceptance by SCC of an uncertified check on an account it knew to be frozen rendered the transaction a credit transaction.
 
 
 14
 Payment by an uncertified check, without more, does not ordinarily convert a cash sale to one for credit if a cash sale is intended. Engstrom v. Wiley, 191 F.2d 684, 686 (9th Cir. 1951). Normal commercial practice requires the use of checks in lieu of cash and, in fact, in sales of goods transactions specific provision is made by statute that payment by any means in the ordinary course of business is sufficient unless the seller demands cash and allows a reasonable extension of time for the buyer to procure it. Uniform Commercial Code § 2-511 (McKinney 1964). In the instant case, however, there was reason to believe that the check would not be honored and consequently could not be immediately converted into cash. Under these circumstances it cannot be said that the check was taken as the equivalent of cash. Moreover, acceptance of an uncertified check is a deviation from SCC's ordinary course of business with its members, particularly when that acceptance is with knowledge that the account upon which it is drawn is frozen. In waiving its right to certification and failing to exercise any of the other panoply of rights it enjoyed under the Rules, SCC was relying on the credit of Weis. Thus, irrespective of whether the clearing system contemplates cash transactions, the conduct of SCC converted the particular transaction at issue here into a credit sale. As such, SCC cannot successfully maintain an action for reclamation and the dismissal of its complaint is affirmed.[7]
 
 
 
 [1]
 By stipulation of the parties and with the approval of the Bankruptcy Court the Trustee was permitted to dispose of the securities and an escrow fund in the amount of $1,135.459.87, the sum Weis Securities, Inc. was obligated to pay for the securities delivered by SCC, has been established in place thereof
 
 
 [2]
 The above description is a rough simplification of the SCC clearing and settlement procedure. It is not necessary to outline in full detail the precise manner by which debit and credit balances are calculated including clearance cash adjustments, New York State transfer taxes, etc. for the purposes of our decision
 
 
 [3]
 Subsequent to the transaction here at issue SCC amended its rules. Thus, the version of the rules now printed in the CCH New York Stock Exchange Guide did not apply to these transactions
 
 
 [4]
 Rule 7, in pertinent part, provides:
 If at the close of any business day, a balance is due the Corporation from a Settling Member, a check on a bank or trust company in the vicinity of the Exchange, payable through the New York Clearing House Association, drawn to the order of Stock Clearing Corporation for the amount of such balance shall be delivered to the Corporation at the Settlement Department before 3 P.M. on business days. The check shall be certified if for $5,000 or over, unless it is the check of a bank which is a Non-Member Bank, or unless certification is waived by the corporation in its discretion. If the check is in payment of a balance due by a Clearing Member, or Non-Clearing Member, it shall be a check of a member organization of the Exchange.
 If at the close of any business day a balance is due a Settling Member by the Corporation, a memorandum of such balance in such form as the Corporation shall require shall be presented to the Corporation before 3 P.M. on business days. The Corporation shall make available to the Settling Member its check for the amount of such balance at the Settlement Department not later than 3 P.M. on business days.
 
 
 [5]
 Under SCC rules, SCC does not hold the securities in its possession on its own behalf. Rather, the securities are always held on behalf of either the receiving or delivering member. When envelopes containing securities are delivered to SCC they must be accompanied by a duplicate "credit list" which lists each envelope being delivered, the receiving member to whom it is directed, the money value of the contents of each envelope and the total money value for the envelopes to which the credit list applies. Rule 6, § 1(3). An SCC clerk then checks the information on the outside of the envelopes against the credit list and if everything is properly listed stamps the duplicate credit list. Prior to stamping SCC holds the envelopes on behalf of the delivering member; subsequent to stamping it holds the securities on behalf of the receiving member. Rule 6, § 1(6). It was this factor, together with the Rules which accord SCC a lien upon the securities in its possession, which led the Bankruptcy Court to find that SCC held the securities as a bailee and never had title to the securities as an owner. A bailee may not successfully maintain a suit for reclamation when it has voluntarily parted with possession by re-delivery to the bailor or delivery to a third-person pursuant to the bailor's instruction since these acts terminate the bailment and, of course, the status of bailee. See Pan-American Petroleum Transportation Co. v. Robins Dry Dock & Repair Co., 281 F. 97, 107 (2d Cir.), cert. denied, 259 U.S. 586, 42 S.Ct. 589, 66 L.Ed. 1076 (1922); Mays v. New York, New Haven & H.R.R. Co., 197 Misc. 1062, 1064, 97 N.Y.S.2d 909, 912 (App.Term, 1st Dept. 1950). SCC, characterizing the Bankruptcy Court decision as one which denied their claim for lack of "standing," alleges that even if it is not an owner it has standing as a subrogee since it has paid the delivering brokers. Because, as discussed infra, we are assuming that SCC enjoys a status sufficient to allow consideration of its claim on the merits, we need not examine its alleged standing as a subrogee
 
 
 [6]
 The district court, as noted above, found that the delay between receipt of the securities and payment therefor rendered the transaction a credit transaction from its inception as a matter of law. SCC vigorously argues that the delay is necessary to allow receiving members to verify that the items delivered are in proper form and, in fact, the ones he ordered. Citing In re Perpall, 256 F. 758 (2d Cir. 1919), appellant maintains that delay between delivery and payment does not make a transaction one for credit when such delay is merely the consequence of settling procedures, i. e., verification, bookkeeping entries, etc. The Trustee, in rebuttal, insists that SCC's clearing system obviates the need for brokers to take out interest-bearing intra-day loans and that the delay works as an extension of credit to members by SCC. Indeed, the Trustee argues that this aspect of the clearing system represents one of the principal functions performed by SCC. In any event the Trustee contends that the Perpall rule, under which a cash seller retains title until payment has been received, is superceded by New York's adoption of the Uniform Commercial Code. Citing UCC §§ 8-301(1) and 8-313, the Trustee maintains that delivery by the clearinghouse to a member transfers any and all rights the clearing house has in the securities to the transferee. Thus, delivery to Weis transferred title to the broker or its customer and, even if a cash transaction was intended, the transference of title under the UCC precludes reclamation. We do not pass upon the merits of this argument
 
 
 [7]
 SCC makes an additional argument as to securities with a money value of $61,300 which must have been delivered to Weis several hours after liquidation proceedings commenced. We briefly note that Weis received none of these securities as principal but rather they were the return of securities borrowed from Weis and all were attributable to Weis' customers. Although SCC may have exercised its lien rights as to these securities, it cannot claim title to them as title was held by Weis' customers. Without title, SCC's reclamation claim falters