In re CANDOR DIAMOND
CORP., Debtor.

Daniel McCOLLEY, Trustee of Candor
Diamond Corp., Plaintiff,

v.

MATMON GEM CO., INC., Defendant.

Bankruptcy No. 81 B 11594 (EJR).
Adv. No. 82–5600A.

United States Bankruptcy Court,
S.D. New York.

Nov. 14, 1984.

Stroock & Stroock & Lavan, New York City, for Daniel McColley, Trustee of Candor Diamond Corp.

Schlossberg & Siegel, New York City, for Matmon Gem Corp.

## DECISION AND ORDER DIRECTING RECOVERY OF PREFERENTIAL TRANSFERS

EDWARD J. RYAN, Bankruptcy Judge.

On August 10, 1981, an involuntary petition under Chapter 7 of the Bankruptcy Code (the Code) was filed against Candor Diamond Corp. (Candor), and an order for relief was entered.

On April 29, 1982, Daniel McColley, the trustee of Candor, commenced the above-captioned adversary proceeding against Matmon Gem Co. (Matmon), to recover the sum of $71,634.70, pursuant to 11 U.S.C. § 547(b) (1982).

Prior to the filing of the petition, Candor was in the business of buying and selling loose gems and manufacturing and selling jewelry. Matmon sold diamonds and other precious stones to Candor.

This proceeding to recover allegedly preferential transfers arises out of a series of transactions among Candor, Matmon and Chase Manhattan Bank, N.A. (Chase). On five separate occasions between January and June 1981, Matmon delivered diamonds to Candor. In exchange for the

diamonds, and simultaneously with their delivery, Candor gave Matmon a number of promissory notes for the full value of the diamonds, plus interest, payable to the order of Matmon at a stated date ranging from 48 days to six months in the future. Matmon immediately presented the promissory notes to Chase, and received their face value without interest. Upon presentment of the notes by Chase between June 12, 1981 and August 6, 1981, Candor paid the bank a total of $71,634.70, representing their full face value plus interest.[1]

The trustee is now seeking to recover from Matmon as preferential transfers these payments made by Candor to Chase within the 90 days prior to the filing of the petition on August 10, 1981.

It is not disputed by the parties that these payments meet the requirements for a preferential transfer set out in 11 U.S.C. § 547(b) (1982). Therefore, at issue is the validity of Matmon's affirmative defense that the transfers were contemporaneous exchanges for new value within the meaning of § 547(c)(1) of the Code, which provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1) (1982).

Matmon argues that Candor's payments to Chase within 90 days of the filing of the petition related back to the transactions between Matmon and Candor. These, Matmon contends, were intended to be, and were in fact, contemporaneous exchanges for new value. Candor gave its notes to Matmon in exchange for goods and Matmon immediately negotiated the notes for face value with Chase, so that the notes, Matmon claims in effect, could be considered quasi-cash.

The trustee maintains that these cannot be considered contemporaneous transac-

---

1. The complete series of transactions, stipulated to by the parties, is as follows:

On January 19, 1981, Matmon delivered diamonds worth $20,733.90 to Candor. Matmon received six promissory notes in exchange for these diamonds. Three of these notes were dated January 20, 1981, and provided for the payment of interest at 23% after 60 days. In accordance with the understanding between Candor and Matmon, on or about January 20, 1981, Matmon indorsed the notes and discounted them with Chase and received the face value of the notes without interest. All of the notes were paid by Candor upon presentment by Chase on the following due dates: On June 12, 1981 in the total amount of $2,107.33 ($2,000 plus interest of $107.33); on June 29, 1981 in the total amount of $2,462.73 ($2,313.45 plus interest of $149.28); on July 7, 1981 in the total amount of $9,918.25 ($9,313.45 plus interest of $604.80).

On January 24, 1981, Matmon delivered diamonds worth $17,313.45 to Candor. In exchange for these diamonds, Matmon received notes from Candor, payable in July, for the full amount plus interest. Matmon immediately discounted these notes with Chase and received the full face amount without interest. Candor paid the notes in July, upon presentment of the notes by Chase, in the full face amount of the notes plus interest.

On March 27, 1981, Matmon delivered diamonds to Candor. In exchange, Matmon received a note dated March 27, 1981, payable July 13, 1981 in the amount of $2,939.20 plus interest. Matmon discounted the note with Chase and received the full face value of the note. On July 13, 1981, Candor paid Chase the full amount of the note plus interest for a total of $3,088.16.

On May 17, 1981, Matmon delivered diamonds to Candor worth $12,392.50, and on May 18, 1981 Matmon delivered diamonds to Candor worth $14,040.00. Simultaneously with these deliveries, Matmon received four notes payable July 9, August 7, September 9 and October 9, 1981, in the total amount of $26,432.50. Matmon discounted the first two notes with Chase, and Candor paid these notes upon presentment by Chase on the due dates in the amounts of $13,261.24 plus interest of $135.10. Matmon discounted the latter two notes with Grace Discount Corp. (Grace). The latter notes were returned unpaid by Candor, and Matmon repaid Grace the face amounts.

On or about June 19, 1981 Matmon received a note from Candor in the amount of $27,963.50. Matmon immediately discounted the note with Chase. Candor paid the note on August 6, 1981 in the total amount of $27,963.50 upon presentment by Chase on the due date.

tions, because Matmon remained liable on the notes in the event Candor did not pay the bank. The trustee argues that when Candor paid the notes upon presentment by Chase within the 90-day preference period, this was a transfer benefiting Matmon, by relieving it of its contingent liability, 11 U.S.C. § 547(b)(1), and on account of an antecedent debt, the debt represented by the notes Candor gave Matmon in exchange for goods. 11 U.S.C. § 547(b)(2).

The case law has not yet addressed the issue of whether payment by note may constitute a contemporaneous exchange for purposes of § 547(c)(1). But Comment 6 to § 2-511 of the Uniform Commercial Code (U.C.C.) assumes that a note is a credit instrument: "Where the instrument offered by the buyer is not payment but a credit instrument as a note ... the seller's acceptance of the instrument insofar as third parties are concerned amounts to a delivery on credit ...."

██ Payment by check is normally intended to be a cash transaction, although some extension of credit is necessarily involved until the check is negotiated. *In re Arnett*, 731 F.2d 358, 361 (6th Cir.1984).

The legislative history of § 547(c)(1) is instructive in this regard:

> The first exception [to the trustee's avoiding power] is for a transfer that was intended by all parties to be a contemporaneous exchange for a new value, and was in fact substantially contemporaneous. Normally, check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. section 3-503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5874, 6329.

For the purposes of § 547(c)(1), payment of a debt by check was treated as equivalent to a cash payment unless the check was dishonored, and payment was considered made when the check was delivered. 124 Cong.Rec.H. 11089, 11097 (daily ed. Sept. 28, 1978); S. 17403, 17414 (daily ed. Oct. 6, 1978); *Kirstein Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 251 (D.Me.1984); *see Engstrom v. Wiley*, 191 F.2d 684, 689 (9th Cir.1951).

██ Matmon's argument in effect treats payments by note as if they were payments by check. However, the mere fact that Matmon received notes in exchange for goods and discounted them immediately at Chase does not make these contemporaneous transactions, because Matmon was relying on Candor to honor its obligation on the notes upon presentment by Chase at a future date. For the reasons set forth below, this court declines to extend the area of contemporaneous "cash" transactions beyond the bounds of Congress's clear intent.

A note is evidence of a credit transaction. When payment in the form of a note is exchanged for new value as contemplated by § 547(c)(1), it might be argued that the note should be treated as "cash", as a check is. But the differences between the two forms of negotiable instrument compel a different conclusion.

First, Congress clearly contemplated a delay of from a few days to a month in presentment of a check for payment after delivery. *See* H.R.Rep. No. 595 and S.Rep. No. 989, *supra*. The notes given Matmon were presented for payment at dates ranging from 48 days to six months from the date of the initial exchanges. The "contemporaneous exchange for new value" of the subsection means an exchange that is cash, or as much like cash as possible. Congress chose to draw the line at checks. The time factor is thus an important consideration in viewing the notes as credit transactions.

This time element suggests several corollaries: A seller who accepts a check payable to his order on demand has significant-

ly different expectations from one who accepts a note made out to his order, but payable on a set date in the future at a stated interest rate. Although there is some delay in payment of a check, it is due only to the mechanics of negotiation. *See In re Arnett, supra.*

In contrast, delay in payment is built into a note transaction; it is an integral feature for which the parties have bargained. The seller agrees to accept payment on the note at a specified date in the future in exchange for the stated interest. Thus the payee-seller assumes the risk of default by the drawer-buyer and is paid for his assumption of the risk. There is, of course, no interest paid or contemplated for the delay in payment of a check.

Finally, this issue must be viewed in the light of the purpose of Congress in treating a check as a cash transaction. Checks were treated in this manner so as to facilitate commercial transactions, because checks are used in lieu of cash in the ordinary course of business. *See Stock Clearing Corp. Inc. v. Weis Securities,* 542 F.2d 840, 845 (2d Cir.1976). In contrast, notes are not ordinarily exchanged for goods in the marketplace, particularly by individual consumers.

However, Matmon presented evidence that exchanging notes for goods was the practice in the diamond industry to show that the parties intended a contemporaneous "cash" exchange. Even if this is indeed the custom in the diamond industry, the purpose of Congress was to encourage and protect general marketplace transactions, where payment by check is customary. The court feels constrained to draw a boundary at Congress's evident purpose rather than singling out the commercial practice in one industry for protection.

Moreover, § 547(c)(1) requires not only that the parties intend a contemporaneous exchange, but also that the exchange be "in fact, substantially contemporaneous". The Matmon-Candor-Chase transactions do not meet this criterion, because, for the reasons previously discussed, they carry the clear indicia of credit: the exchanges between Candor and Matmon were not completed until Candor, in its discretion, chose to pay Chase on its notes. As such, the payments the trustee is seeking to void were on account of antecedent debts. 11 U.S.C. § 547(b)(2); *Stock Clearing Corp., Inc. v. Weis Securities,* 542 F.2d at 843.

■ Candor's payments to Chase met all the other elements of a preference, and were for the benefit of the notes' endorser, Matmon. 11 U.S.C. § 547(b)(1). A guarantor or surety for the debtor, or an endorser of his notes or checks, is a creditor under the Code, because he holds a contingent claim against the debtor. Therefore, payment made by the debtor to the holder of his notes is a preference to the endorser, if the other elements of a preference exist. 4 Collier on Bankruptcy ¶ 547.18 at 547–62–63 (15th ed. 1984).

For these reasons, Matmon is directed to return to the trustee preferential transfers in the amount of $71,634.70, plus interest, costs and disbursements.

It is so ordered.