In re DAY TELECOMMUNICATIONS, INC., Debtor.

David W. BOONE, Trustee in Bankruptcy for Day Telecommunications, Inc., Plaintiff,

v.

William C. MARLATT, Jr., Defendant.

Bankruptcy No. 86–50588–ATS.

Adv. No. S–86–0131–AP.

United States Bankruptcy Court, E.D. North Carolina.

March 10, 1987.

David W. Boone, trustee, Raleigh, N.C., for debtor.

Holmes P. Harden, Raleigh, N.C., for William C. Marlatt, Jr.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are cross motions for summary judgment in this ad-versary proceeding brought by the chapter 7 trustee alleging a preferential transfer under 11 U.S.C. § 547 or, in the alternative, a fraudulent conveyance under 11 U.S.C. § 548. A hearing was held in Raleigh, North Carolina, on February 23, 1987.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), which this court may hear and determine.

## FACTS

David W. Boone, the chapter 7 trustee for the debtor, Day Telecommunications, Inc., has brought this action seeking to recover a $6,000 payment made by the debtor to the defendant, William C. Marlatt, Jr., for legal services Mr. Marlatt per-formed on behalf of E. Locke Walsh, an employee of the debtor. The defendant has admitted in his answer that the pay-ment was made within 90 days prior to the filing of the debtor's bankruptcy petition on March 11, 1986.

An affidavit signed by the defendant and an affidavit signed by Mr. Walsh which were filed by the defendant state the fol-lowing:

The defendant drafted an employment agreement between the debtor and Mr. Walsh in June of 1985. The agreement, which was ratified by the debtor's Board of Directors on August 7, 1985, provided that the debtor would reimburse Mr. Walsh for legal expenses incurred in Walsh's pending litigation with Madison-Kipp Corporation. The defendant subsequently billed either the debtor or Mr. Walsh[1] $5,000 for the

---

1. The defendant's affidavit states that Mr. Walsh was billed; according to Mr. Walsh's affidavit,

services rendered in connection with the employment agreement. Mr. Walsh's affidavit states that he has refused to pay this bill because he views it as excessive and because the defendant did not itemize his time charges.

The affidavits filed by the defendant also state that in the fall of 1985 the defendant drafted and negotiated a licensing agreement for the debtor and, with the debtor's authorization, purchased a computer modem and communications equipment to facilitate communications between the debtor's and the defendant's offices. In January of 1986, the defendant billed the debtor $2,000 for his legal services and for the cost of the computer. This bill was paid by the debtor on February 12, 1986. (The trustee is not seeking to recover this payment in this adversary proceeding.)

Beginning in November of 1984, the defendant represented Mr. Walsh in his lawsuit against Madison-Kipp Corporation. Mr. Walsh had paid the defendant a retainer of $5,000 on October 31, 1984. According to the affidavit signed by the defendant, the defendant submitted a bill to Mr. Walsh on April 1, 1985, for $7,411.00 for services rendered between November 11, 1984, and March 8, 1985.[2] A balance of $2,411.00 was due after deducting the $5,000 retainer payment. On May 14 or 15, 1985, the defendant submitted an additional bill of $506.00 for services rendered through April 23, 1985. When added to the previous balance due of $2,411.00, the new unpaid balance was $2,917.00. This total was paid to the defendant by the debtor on August 8, 1985, (according to Mr. Walsh's affidavit) or on August 20, 1985 (according to the affidavit signed by the defendant). (Again, the trustee is not seeking to recover this payment in this proceeding.)

The defendant did no work on the Madison-Kipp case between April 23, 1985, and January 14, 1986, because a settlement appeared likely. On January 14, 1986, when

it was apparent that settlement was not imminent, the defendant began conducting discovery to prepare for the deposition of Mr. Walsh which was scheduled for February 28 and March 1, 1986.

The affidavit signed by the defendant then states the following:

5. On or about February 27, 1986, I informed Walsh that unpaid legal fees in connection with the Madison-Kipp lawsuit would approximate $7,000.00 through the deposition scheduled for February 28, 1986 and March 1, 1986, and that I required an assurance of payment before I would proceed with the deposition.

6. On February 27, 1986, E. LOCKE WALSH represented to Affiant that the current charges relating to the Madison-Kipp lawsuit would be paid during the first week of March, 1986.

7. In reliance upon the assurance that my fees would be paid during the first week of March, 1986, I proceeded with the discovery depositions in the Walsh v. Madison Kipp lawsuit.

8. On or about February 28, 1986, a monthly statement was prepared and mailed to Day Telecommunications, Inc. in care of E. Locke Walsh, 595 East Illinois, Lake Forest, Illinois 60045, detailing charges from January 14, 1986, through February 28, 1986.

9. On or about March 4, 1986, WILLIAM C. MARLATT, Jr. received payment from Day Telecommunications, Inc. in the amount of $6,000.00.

Mr. Walsh's affidavit has a similar description of the meeting on February 27 with the defendant. The affidavit then states:

8. On February 27, 1986, I prepared and forwarded a statement to Day Telecommunications, Inc., based upon my conversation with Mr. Marlatt, in the amount of $7,000.00; and later that day, after re-

---

the defendant billed the debtor.

2. Mr. Walsh's affidavit states that the bill was tendered on March 1, 1985, and covered services rendered between November 5, 1984, and

March 8, 1985. The court's rulings on the motions before it would be the same no matter which dates are accurate, those in Mr. Walsh's affidavit or those in the defendant's affidavit.

viewing Mr. Marlatt's itemized statement, authorized payment of the sum of $6,000.00 to Mr. Marlatt for his legal services rendered in the WALSH v. MADISON–KIPP lawsuit.

The defendant attached to his answer an itemized statement of his charges for legal services in connection with the Madison-Kipp litigation. The statement shows fees of $4,825 from January 14, 1986, through February 27, 1986. The defendant's charges for February 28, 1986, the date of Mr. Walsh's deposition, were $1,250. The total amount due from January 14, 1986, through February 28, 1986, was $6,075.00.

The trustee seeks to recover the $6,000 payment from the debtor to the defendant which was authorized by Mr. Walsh on February 27, 1986, and received by the defendant on or about March 4, 1986.

In his answer to the defendant's interrogatories which the trustee filed on December 2, 1986, the trustee states that the Claims Register indicates that $1,400,000 in claims have been filed against the debtor's estate and that the Interim Accounting of the Trustee shows that the total receipts of the trustee are less than $250,000.

### DISCUSSION AND CONCLUSIONS

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, a party is entitled to summary judgment if it demonstrates that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law. *Gill v. Rollins Protective Services Co.,* 773 F.2d 592, 595 (4th Cir.1985); *In re Hartwig Poultry, Inc.,* 54 B.R. 37 (Bankr.N.D.Ohio 1985). The party seeking summary judgment has the initial burden of showing the absence of any material factual issues. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). If the movant fails to satisfy this initial burden, the party opposing the summary judgment motion has no obligation to submit evidence in opposition to the motion. *Matter of Dempster,* 59 B.R. 453, 455 (Bankr.M.D.Ga.1984). In ruling on a summary judgment motion, the court must view the evidence in a light most favorable to the party opposing the motion. *Rollins Protective Services Co.,* 773 F.2d at 595. However, if the evidence relied upon on by the movant would entitle him to a directed verdict at trial if uncontroverted, summary judgment will be granted unless the adverse party comes forward with evidence demonstrating the existence of a genuine issue of material fact. *In re Independent Clearing House Co.,* 41 B.R. 985, 996 (Bankr.D.Utah 1984), *aff'd in part and rev'd in part,* 62 B.R. 118 (D.Utah 1986); *In re F & S Central Manufacturing Corp.,* 53 B.R. 842, 846 (Bankr.E.D.N.Y.1985). The court may apply these standards to grant summary judgment on the entire case or it may grant a partial summary judgment with respect to certain issues. *Dempster,* 59 B.R. at 455.

In order to prevail on an action to avoid a preferential transfer under 11 U.S.C. § 547, the trustee must prove the following elements: (1) a transfer of the debtor's property; (2) to or for the benefit of a creditor; (3) on account of an antecedent debt; (4) made within 90 days (or 1 year if the creditor was an "insider") prior to the filing of the bankruptcy petition; (5) at a time when the debtor was insolvent; (6) which enabled the creditor to receive more than it would have in a chapter 7 distribution. *In re F & S Central Manufacturing Corp.,* 53 B.R. 842, 846 (Bankr. E.D.N.Y.1985).

The defendant has admitted in his answer that the debtor made a $6,000 payment to him within 90 days prior to the filing of the bankruptcy petition; therefore, the trustee is entitled to summary judgment with respect to elements (1) and (4).

The defendant argues that the payment was not "to or for the benefit of a creditor," as required in element (2), because the debtor had no obligation to pay the defendant, only an obligation to reimburse Mr. Walsh for the amount of the legal expenses he was billed by the defend-

ant. However, the creditor for whose benefit a transfer is made need not be the party to whom the transfer is made. For instance, a guarantor or surety for the debtor is considered to be a creditor of the debtor under the Bankruptcy Code because he holds a contingent claim against the debtor which becomes fixed when the guarantor pays the money owed by the debtor. 4 L. King, *Collier on Bankruptcy* ¶ 547.18, at 547–67–68 (15th ed. 1986); *In re Candor Diamond Corp.,* 44 B.R. 195 (Bankr.S.D.N.Y.1984). Therefore, a payment made by the debtor to the holder of his notes is a preference with respect to the guarantor of the notes if the other elements of a preference exist. *Id.* Similarly, Mr. Walsh was a creditor of the debtor because he held a contingent claim against the debtor which would become fixed when Mr. Walsh paid the defendant for the legal services he had rendered on his behalf. The debtor's payment to the defendant was for Mr. Walsh's benefit since it relieved him of his obligations to pay the defendant. The requirement that the transfer be made to or for the benefit of a creditor is satisfied in this case.

The court also finds that the $6,000 payment was made on account of an antecedent debt. The defendant's affidavit states that he received that payment on March 4, 1986, and all the services for which the payment was made had been performed by February 28, 1986. The debt may actually have been incurred when the debtor signed the employment agreement in 1985 requiring it to pay Mr. Walsh's legal expenses, rather than at the time the legal services were performed. *See Kallen v. Litas,* 47 B.R. 977 (N.D.Ill.1985), in which the court held that, for purposes of 11 U.S.C. § 547, a contingent debt to a law firm arose when the debtor signed a contingency fee arrangement even though the debtor would not be required to pay the law firm unless the law firm was successful in recovering damages for the debtor. The reasoning of *Kallen* suggests that a contingent debt arose in this case when the debtor agreed to reimburse Mr. Walsh for his legal expenses. In any event, even if

the debt did not arise until the legal services were performed, the payment was still on account of an antecedent debt and summary judgment will be granted in favor of the trustee with respect to element (3).

■ The trustee is also entitled to summary judgment on the issue of whether the debtor was insolvent at the time of the transfer. Under 11 U.S.C. § 547(f), there is a rebuttable presumption that the debtor was insolvent for the 90 days preceding the filing of the bankruptcy petition. In order to overcome the presumption, a party must introduce some evidence showing that the debtor was solvent at the time of the alleged preferential transfer. *Matter of Emerald Oil Co.,* 695 F.2d 833 (5th Cir.1983); *Matter of Dempster,* 59 B.R. 453 (Bankr.M.D.Ga.1984). In the present case, the defendant has presented no evidence suggesting that the debtor was solvent. Under these circumstances, summary judgment will be granted in favor of the trustee on this issue. *Id.*

■ The last element which the trustee must prove is that the transfer enabled the creditor to receive more than he would in a chapter 7 distribution. The defendant has not offered any evidence on this issue. The trustee's answers to the defendant's interrogatories filed on December 2, 1986, state that the Claims Register indicates that $1,400,000 in claims have been filed against the debtor's estate and that the Interim Accounting of the Trustee shows that the total receipts of the trustee are less than $250,000. Because claims may be disallowed and because further receipts may come in before the final accounting, the court will deny both the trustee's and the defendant's motions for summary judgment on the question of whether the transfer enabled the creditor to receive more than he would in a chapter 7 distribution. *See Matter of Dempster,* 59 B.R. 453 (Bankr.M.D.Ga.1984), in which the court held that this issue had to be resolved at trial despite the trustee's affidavit stating that unsecured creditors were not likely to receive more than 22¢ on the dollar. The

denial of the summary judgment motions on this point is without prejudice to the right of either party to file a subsequent summary judgment motion which provides more complete information on the chapter 7 distribution.

■ In addition to the elements of a preferential transfer which the trustee must prove, there are also several affirmative defenses which may be raised by the defendant in a preferential transfer action. In order to prevail on one of these defenses, the defendant must plead and prove the exception. *In re F & S Central Manufacturing Corp.,* 53 B.R. 842, 846 (Bankr.E.D. N.Y.1985); *In re Tinnell Traffic Services, Inc.,* 43 B.R. 277, 280 (Bankr.M.D.Tenn. 1984); *Matter of Georgia Steel, Inc.,* 38 B.R. 829, 838 (Bankr.M.D.Ga.1984). Summary judgment will be granted in favor of the trustee on a § 547 affirmative defense if the defendant fails to present evidence showing he is entitled to the defense. *See In re Production Steel, Inc.,* 54 B.R. 417 (Bankr.M.D.Tenn.1985). In the present case, the defendant relies on the "contemporaneous exchange" exception of 11 U.S.C. § 547(c)(1) and the "ordinary course of business" exception of 11 U.S.C. § 547(c)(2).

■ Section 547(c)(1) provides that the trustee may not avoid a transfer which is intended to be a "contemporaneous exchange for new value given to the debtor," and which is "in fact a substantially contemporaneous exchange." This rule is based on the principle that the transfer of new value to the debtor offsets the payment made by the debtor so that the debtor's estate is not depleted to the detriment of other creditors. *In re Auto-Train Corp.,* 49 B.R. 605, 612 (D.D.C.1985), *aff'd,* 800 F.2d 1153 (D.C.Cir.1986). The defendant cannot prevail on this defense for at least two reasons. First, since all the legal services performed by the defendant around the time of the transfer were on behalf of Mr. Walsh, rather than the debtor, there was no new value given to the debtor. Secondly, the parties must have intended that the exchange be contempora-

neous from the outset. *In re Naudain, Inc.,* 32 B.R. 871, 874 (Bankr.E.D.Pa.1983). In this case, most of the legal services for which the debtor made payment had already been performed before the meeting of February 27, 1986, at which the defendant first insisted on immediate payment. Because there was no evidence that the parties intended there to be a contemporaneous exchange prior to February 27, 1986, none of the payments made for services performed before that date qualify for the contemporaneous exchange exception. *See In re Tinnell Traffic Services, Inc.,* 43 B.R. 277 (Bankr.M.D.Tenn.1984). The trustee is entitled to summary judgment on this issue.

■ The defendant also relies on the ordinary course of business exception set forth in 11 U.S.C. § 547(c)(2). Under that section, a transfer will not be subject to avoidance by the trustee if the underlying debt was incurred and the payment of the debt made in the ordinary course of the debtor's and the transferee's business and according to ordinary business terms. *In re Economy Milling Co.,* 37 B.R. 914 (D.S. C.1983). The purpose of this rule is to leave undisturbed normal financial relations while prohibiting any unusual conduct which allows the creditor connected with the transfer to gain an advantage over other creditors. *Id.* at 922. Unusual or abnormal actions by the parties to collect or pay on an existing debt are proscribed. *Id.* In determining whether a payment satisfies the requirements for the ordinary course of business exception, a court should consider the prior course of dealing between the parties, the amount and timing of the payment, and the circumstances surrounding the payment. *In re White,* 58 B.R. 266, 269 (Bankr.E.D.Tenn.1986). The defendant will prevail if he shows that he, or others like him, had engaged in similar transactions with the debtor in the past. *Economy Milling Co.,* 37 B.R. at 922.

■ In the present case, the defendant contends that the ordinary course of business exception applies to the $6,000 payment for services rendered between Janu-

ary 14 and February 28, 1986, made less than a week after the defendant, on February 27, 1986, insisted on being paid before performing further legal services. Although the defendant's affidavits show that the defendant had performed legal services for the debtor and Mr. Walsh in the past, the pattern of payment for those prior dealings is distinctly different from the transaction at issue here. Never before had the defendant refused to perform further legal services if he did not receive immediate assurance of payment. Never before had the defendant received payment so soon after submitting his bill. On prior occasions the debtor had submitted a bill in January of 1986 and been paid on February 12, 1986, and submitted bills in April and May of 1985 and been paid in August of 1985. The defendant has still not been paid his $5,000 bill for drafting an employment agreement between the debtor and Mr. Walsh in June of 1985. Were it not for the defendant's unusual insistence on prompt payment of his bill, it is doubtful that he would have been paid prior to the filing of the debtor's bankruptcy petition. The defendant has failed to show that the transfer satisfies the requirements for the ordinary course of business exception and summary judgment will be granted for the trustee on this issue. *See In re Production Steel, Inc.,* 54 B.R. 417 (Bankr.M.D. Tenn.1985), in which the court granted the trustee's motion for summary judgment on the ordinary course of business exception when the creditor had imposed more stringent payment terms on the debtor than in their three prior transactions.

In sum, the trustee's motion for summary judgment on his complaint to recover a preference under section 547 is granted except with respect to the issue of whether the transfer enabled the creditor to receive more than he would have under chapter 7. The defendant's motion for summary judgment on the preferential transfer action is denied.

Also before the court are the cross motions for summary judgment on the trustee's complaint to recover a fraudulent conveyance pursuant to 11 U.S.C. § 548. The trustee's complaint alleges that the transfer of the $6,000 may be recovered under § 548 because the defendant received less than reasonably equivalent value in exchange for that transfer. The debtor's obligation to pay for the legal services rendered by the defendant on behalf of Mr. Walsh arose out of the debtor's employment contract with Mr. Walsh. Neither side has offered any evidence as to whether the debtor received reasonably equivalent value under that contract. Without such evidence, the summary judgment motions of both the trustee and the defendant on the action to recover a fraudulent conveyance must be denied.

IT IS SO ORDERED.