**Elizabeth AUSTIN, Plaintiff,**

**v.**

**J.C. PENNEY CO., INC., Defendant.**

**No. CV–01–793–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 25, 2001.

Alexander Hugo Blankingship, III, Alexandria, VA, for plaintiff.

Ralph N. Boccarosse, Jr., Fairfax, VA, for defendant.

### *MEMORANDUM OPINION*

CACHERIS, District Judge.

Elizabeth Austin ("Austin") brought suit against J.C. Penney Co., Inc. ("J.C.Penney") alleging, *inter alia*, violation of the Fair Credit Reporting Act ("FCRA"). Specifically, she alleges that J.C. Penney's refusal of a check she tendered in payment for services received constituted an "adverse action" within the meaning of the FCRA, despite the fact that the store accepted the check as payment approximate-

ly forty-five minutes after the initial refusal. The Court is thus presented with a novel question: whether an initial refusal followed soon thereafter by a subsequent extension of credit constitutes an adverse action under the FCRA. This matter is before the Court on J.C. Penney's Motion to Dismiss the Complaint. For the reasons stated below, the Court will grant the motion.

## I.

For purposes of considering the motion before it, the Court takes as true all allegations in the Complaint. Plaintiff Elizabeth Austin went to the J.C. Penney store located in Springfield, Virginia on December 9, 1999 to have her hair styled. Following her appointment, Austin gave the stylist a cash tip in the amount of $5.00 and then attempted to pay the balance for the services rendered, $96.30, by check.

J.C. Penney initially accepted Austin's check. However, after processing it through its check authorization system, J.C. Penney refused to accept the check due to Austin's negative credit history. An employee therefore informed Austin that a different form of payment was required. Because she did not have sufficient cash on hand to pay for the services rendered, Austin was allegedly detained for a short period of time by members of J.C. Penney's loss prevention office and the Fairfax County Police Department, after which time J.C. Penney ultimately accepted the check and Austin was informed that she was free to leave. Both parties agree that no more than forty-five minutes elapsed from the time of Austin's initial presentation of the check to the time of her departure from the store.

Austin's Complaint contains four counts: (1) an action arising under the FCRA; (2) false imprisonment; (3) violation of the Virginia Consumer Protection Act; and (4) assault and battery. Austin alleges that this Court has federal question jurisdiction under 28 U.S.C. § 1331 with respect to Count I, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the remaining counts arising under Virginia statutory and common law.

## II.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991); *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). In passing on a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. The complaint need only state sufficient facts to enable defendants to draft a responsive pleading. *See* 5A Wright, Miller & Cooper, Federal Practice and Procedure 2d § 1357.

## III.

The gravamen of J.C. Penney's Motion to Dismiss is that Austin fails to state a claim under the FCRA in Count I—the sole federal claim in this case—and that supplemental jurisdiction over Counts II through IV is therefore improper.[1] With

1. In her reply to J.C. Penney's Motion to Dismiss, Austin alleged that the service copy of the motion received by her counsel was unexecuted, that the accompanying certificate

regard to Count I, Austin alleges—and J.C. Penney concedes for the purposes of this motion—that she is a "consumer" and that J.C. Penney is a "person" as defined by the FCRA in 15 U.S.C. § 1681a(b) and (c). Therefore, in order to state a claim for an "adverse action" under the FCRA, Austin must show "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).[2]

■ If an adverse action is taken against a consumer, J.C. Penney, as a person using a consumer report under the FCRA, must comply with 15 U.S.C. § 1681m(a), which states as follows:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—
>
> (1) provide oral, written, or electronic notice of the adverse action to the consumer;
>
> (2) provide to the consumer orally, in writing, or electronically—
>
> (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
>
> (B) a statement that the consumer reporting agency did not make the deci-

sion to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and

> (3) provide to the consumer an oral, written, or electronic notice of the consumer's right—
>
> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
>
> (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m(a). A private right of enforcement exists for willful or negligent violations of 15 U.S.C. § 1681m(a) under 15 U.S.C. §§ 1681n and 1681o. *See, e.g., DiCarlo v. Maryland Auto. Ins. Fund,* 855 F.Supp. 823, 824 (D.Md.1994)

■ The parties focused a great deal of time and effort, both in their briefs to the Court and at the hearing for this motion, on addressing the issue of whether a check is a credit instrument which properly falls within the scope of the FCRA such that a refusal of a check constitutes a denial of credit, and therefore an adverse action, as defined above. The Court notes that there is conflicting authority with respect to this issue,[3] but assumes *arguendo* for the pur-

---

of service was also unexecuted and undated, and that the Motion to Dismiss should therefore be stricken. Austin withdrew this argument at the hearing for this motion, and the Court therefore does not address it here.

**2.** The FCRA expressly adopts the definition of "adverse action" established in 15 U.S.C. § 1691(d)(6). *See* 15 U.S.C. § 1681a(k)(1)(A).

**3.** *Compare Greenway v. Info. Dynamics, Ltd.,* 524 F.2d 1145, 1146 (9th Cir.1975) (noting in *dicta* that "a check ... is, essentially, an instrument of credit") *with Jordan v. Chang,* 35 Va. Cir. 402, 36 Va. Cir. 440 (1995) (holding that, in the absence of an allegation that an instrument "is anything other than a demand instrument," "a check is not a credit transaction") *and In re Candor Diamond*

poses of this motion that a check is in fact a credit instrument.

■ Therefore, the primary issue before the Court is whether the refusal of Austin's check by J.C. Penney constitutes an adverse action as described by the FCRA provisions cited above. It is axiomatic that, in order to state a claim for an adverse action in this situation, Austin must first demonstrate that she was actually denied credit by J.C. Penney. *See Podell v. Citicorp Diners Club, Inc.*, 859 F.Supp. 701, 705–06 (S.D.N.Y.1994). Yet, as she concedes in her Complaint, J.C. Penney (1) initially accepted the check as payment; (2) temporarily revoked this acceptance and requested another form of payment once Austin's credit history was known; and (3) then ultimately accepted the check as full payment for services rendered when Austin was unable to immediately offer any other form of payment. Pl.'s Compl. ¶¶ 35, 42.

At the hearing on this matter both parties agreed that, in total, these events took no more than forty-five minutes to unfold. Any denial of credit by J.C. Penney was therefore preliminary and fleeting at best. Accordingly, such denial fails as a matter of law to constitute an adverse action under the FCRA. *Cf. Obabueki v. Int'l Bus. Machs. Corp.*, 145 F.Supp.2d 371, 391–92 (S.D.N.Y.2001) (holding preliminary internal decision to rescind an offer of employment insufficient to constitute an adverse action under the FCRA as it relates to denials of employment).

The necessity of this conclusion is perhaps best illustrated by a consideration of the burden Austin's interpretation of the FCRA would place on merchants and service providers, many of whom undoubtedly use consumer credit reports numerous times throughout the course of an average business day. That is, under the reading of the FCRA advanced in the Complaint, any provider of goods or services who declines to accept a consumer's credit card, check, or other form of non-cash payment based on the consumer's credit history would have to immediately provide the consumer with: (1) the name, address, and telephone number of the consumer reporting agency which provided the information; (2) a statement that the decision to decline the extension of credit was not made by the reporting agency and that the reporting agency is not able to provide specific reasons for the adverse action; and (3) a statement of the consumer's right to obtain a free copy of the consumer report from the consumer reporting agency if requested within sixty days and to dispute the accuracy or completeness of the information included in the report. *See* 15 U.S.C. § 1681m.

Further, cashiers, waiters, and other types of salespersons would presumably be required to provide all of this information instantaneously and prior to inquiring as to whether the consumer is capable of utilizing another form of payment. Under Austin's theory, any failure to do so would violate the FCRA. The Court declines to adopt such an expansive reading of the provisions of the FCRA.

Accordingly, Austin's FCRA claim will be dismissed with prejudice. The Court makes no findings with respect to the merits of the remaining counts in the Complaint (*i.e.*, Count II, false imprisonment; Count III, violation of the Virginia Consumer Protection Act; and Count IV, assault and battery), and declines to exercise pendent jurisdiction over them. *See Unit-*

*Corp.*, 44 B.R. 195, 197 (Bankr.S.D.N.Y.1984) (holding that "[p]ayment by check is normally intended to be a cash transaction, although some extension of credit is necessarily involved until the check is negotiated").

ed *Mine Workers v.. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court will therefore dismiss Counts II through IV of the Complaint without prejudice to be pursued in state court.

### IV.

For the foregoing reasons, the Motion to Dismiss will be granted. An appropriate Order will issue.

### *ORDER*

In accordance with the accompanying Memorandum Opinion, it is hereby OR-DERED that:

1) Count I of Plaintiff Elizabeth Austin's Complaint is Dismissed with Prejudice;

2) Counts II through IV of Plaintiff Elizabeth Austin's Complaint are Dismissed Without Prejudice;

3) Defendant J.C. Penney Co., Inc.'s Motion to Dismiss the Complaint is GRANTED; and

4) The Clerk of the Court shall forward copies of this Order and the accompanying Memorandum Opinion to all counsel of record.

This ORDER is FINAL.